IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Denmon Albert Benton, | ) | C/A No.: 1:15-4859-BHH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.      Relevant Background

        A.      Procedural History

On June 19, 2014, Plaintiff protectively filed applications for DIB and SSI in which he alleged his disability began on August 1, 2009. Tr. at 100, 101, 217–20, and

221–26. His applications were denied initially and upon reconsideration. Tr. at 136–40 and 144–49. On April 16, 2015, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Thomas Henderson. Tr. at 38–51 (Hr'g Tr.). The ALJ issued an unfavorable decision on May 5, 2015, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 19–37. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on December 8, 2015. [ECF No. 1].

> B.    Plaintiff's Background and Medical History

> > 1.    Background

Plaintiff was 50 years old at the time of the hearing. Tr. at 41. He completed high school and one year of college. Tr. at 48. His past relevant work ("PRW") was as a tax preparer, a bookkeeper, and a sales analyst. *Id.* He alleges he has been unable to work since August 1, 2009. Tr. at 217.

> > 2.    Medical History

> > > a.    Evidence Presented to ALJ

Plaintiff presented to the emergency room ("ER") at Colleton Medical Center on July 29, 2009. Tr. at 411. He complained of a fall that had occurred the night before and reported chest pain. *Id.* He stated he felt like he was having a heart attack. *Id.* Cardiologist Robert A. Pringle, M.D. ("Dr. Pringle"), examined Plaintiff and indicated an electrocardiogram ("EKG") showed an acute myocardial infarction. Tr. at 388–89. He

performed a left heart catheterization, a left ventriculogram, a coronary angiogram, and an angioplasty and inserted a stent in Plaintiff's circumflex artery. Tr. at 390–91. Plaintiff was discharged on July 31, 2009, with diagnoses of acute inferior wall myocardial infarction, coronary artery disease, tobacco abuse, and dyslipidemia. Tr. at 392. He was instructed to perform only light activity over the next few weeks, but, thereafter, to resume his prior activity as tolerated. Tr. at 393.

On August 17, 2009, Plaintiff denied cardiac symptoms, but indicated his blood pressure had been running low and causing him to feel weak and tired. Tr. at 385. Dr. Pringle indicated Plaintiff's low blood pressure may be caused by Metoprolol and advised him to wean himself off the medication. *Id.* He prescribed Chantix and strongly encouraged Plaintiff to stop smoking. *Id.*

On October 26, 2009, Dr. Pringle indicated Plaintiff was doing well and was stable from a cardiac standpoint. Tr. at 386. He advised Plaintiff to stop smoking and to follow up on a semiannual basis. *Id.*

Plaintiff presented to the ER at Colleton Medical Center on February 26, 2010, after being injured in a motor vehicle collision. Tr. at 404. He complained of mild pain in his neck, right shoulder, and bilateral hips. *Id.* An x-ray of his cervical spine showed no evidence of acute cervical fracture, but indicated degenerative spondylosis and degenerative disc space narrowing at C4-5. Tr. at 403. The attending physician diagnosed neck pain and acute cervical strain and prescribed 800 milligrams of Motrin for pain. Tr. at 406.

On March 15, 2010, radiologist James A. Thesing, D.O. ("Dr. Thesing"), interpreted magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine to reveal the following: mild disc degeneration and moderate facet arthrosis at L4-5; a right posterolateral disc osteophyte complex that produced moderate right lateral recess stenosis with mild flattening of the right L5 nerve root; moderate bilateral foraminal stenosis; mild disc degeneration and moderate arthritis at L5-S1; a shallow left dominant disc protrusion that produced mild flattening and posterior deflection of the left S1 nerve root; and moderate left and mild right L5 neural foraminal stenosis. Tr. at 528.

On May 26, 2010, Plaintiff presented to R. Blake Dennis, M.D. ("Dr. Dennis"), with complaints of pain in his back and neck and a shaky feeling in his right leg. Tr. at 422. Plaintiff demonstrated slightly limited range of motion ("ROM") in his cervical and lumbar spine, but his physical examination was otherwise unremarkable. *Id.* Dr. Dennis reviewed the MRI report and indicated he failed to see the abnormalities reported by Dr. Thesing. *Id.* He noted the MRI showed some mild disc desiccation at L4-5 and L5-S1 and some minimal annular bulging that was worse on the right, but no nerve root compression. *Id.* He recommended Plaintiff undergo an electromyography ("EMG") and nerve conduction studies ("NCS") in his lower extremities and a cervical MRI. Tr. at 424. Radiologist Richard C. Holgate, M.D., interpreted the MRI as showing myelopathic signal and severe compression at C4-5 and moderate-to-severe compression at C3-4 and C5-6. Tr. at 440. He noted sclerotic osteophytes at all levels; moderate bilateral foraminal stenosis at C2-3 and C7-T1; and moderate spinal cord compression with severe bilateral foraminal stenosis at C6-7. *Id.* Leonard E. Forrest, M.D. ("Dr. Forrest"), indicated the

EMG and NCS showed no evidence of a radiculopathy, lumbosacral plexopathy, peripheral compressive neuropathy, peripheral polyneuropathy, or myopathy. Tr. at 444.

On June 9, 2010, Dr. Forrest indicated Plaintiff had positive clonus in his right lower extremity, positive Babinski maneuver on the right, and increased quadriceps and Achilles reflexes in his bilateral lower extremities. Tr. at 439. Based on the lumbar MRI, the cervical MRI, and the EMG and nerve conduction studies, Dr. Forrest suggested that Plaintiff's low back and right leg problems were unrelated. *Id.* He referred Plaintiff back to Dr. Dennis to discuss the twitching in his left index finger and arm and right leg. Tr. at 438.

Dr. Dennis indicated Plaintiff's MRI showed cord compression at C4-5 and that he should consider surgery. *Id.* On June 21, 2010, Dr. Dennis stated Plaintiff had myelopathic cord changes at C4-5 that were associated with compression at that level. Tr. at 435, 437. He recommended Plaintiff undergo C4-5 fusion to stabilize his cervical spine and prevent worsening. Tr. at 437.

Plaintiff presented to Dr. Pringle for surgical clearance on June 24, 2010. Tr. at 569. He denied chest pain, shortness of breath, paroxysmal nocturnal dyspnea, and peripheral edema. *Id.* Dr. Pringle noted no abnormalities on examination. *Id.*

On July 19, 2010, Donald R. Johnson, M.D. ("Dr. Johnson"), and Steven Poletti, M.D. ("Dr. Poletti"), performed an anterior cervical discectomy, anterior interbody fusion, placement of a PEEK cage, and cervical plating at Plaintiff's C4-5 disc level. Tr. at 455.

Plaintiff presented to Daniel R. Butler, PA-C ("Mr. Butler"), for suture removal on August 2, 2010. Tr. at 434. Mr. Butler indicated Plaintiff's incision was well-healed and showed no signs of infection. *Id.* Plaintiff complained of right scapular pain that was slowly resolving. *Id.* Mr. Butler prescribed OxyIR 5 milligrams and a Medrol Dosepak and recommended a bone growth stimulator. *Id.*

On August 30, 2010, Mr. Butler indicated Plaintiff had returned to work on light duty. Tr. at 433. He stated an x-ray showed Plaintiff to have good placement of his plate and screws and consolidation of his fusion. *Id.* He noted continuous clonus in Plaintiff's right lower extremity. *Id.* Mr. Butler referred Plaintiff to physical therapy for core stabilization. *Id.*

Plaintiff demonstrated continuous clonus in his right lower extremity on October 25, 2010. Tr. at 432. He complained of left interscapular pain. *Id.* Mr. Butler referred Plaintiff for an updated cervical MRI. *Id.* The MRI showed moderate-to-severe stenosis and moderately severe spinal cord compression with probable myelopathic signal change and multilevel severe spondylosis with a high probability of nerve root compression in the exit foramina. Tr. at 442–43.

On October 27, 2010, Dr. Johnson indicated further surgical intervention was not indicated because the MRI did not suggest Plaintiff's myelopathic level had been decompressed. Tr. at 431. He noted that further surgery would require extension of Plaintiff's fusion to three, four, or five levels. *Id.* He recommended Plaintiff undergo facet injections and referred him to Mark D. Netherton, M.D. ("Dr. Netherton"), for facet joint rhizotomy. *Id.*

Plaintiff presented to Dr. Netherton for a consultation on December 8, 2010. Tr. at 428–30. He complained of a sharp, aching, burning pain in his neck and shoulder area that was exacerbated by lifting and reaching. Tr. at 428. He endorsed symptoms of fatigue, neck pain, and shoulder stiffness. Tr. at 429. He indicated he was working part-time as an administrative assistant. Tr. at 428. Dr. Netherton observed Plaintiff to have intact cranial nerves, good ROM in his upper extremities, good grip strength, normal sensation in his lower extremities, and normal sympathetic function in his upper extremities. Tr. at 429. Plaintiff complained of pain mostly on the left side of his cervical spine with flexion, extension, and side-to-side rotation. *Id.* Dr. Netherton recommended Plaintiff proceed with a rhizotomy at the left C5, C6, and C7 levels. *Id.*

On November 4, 2010, G. Robert Richardson, M.D., administered bilateral facet injections at Plaintiff's C4-5, C5-6, and C6-7 levels. Tr. at 453.

Plaintiff underwent radiofrequency rhizotomy on the left at C3, C4, and C5 on December 20, 2010. Tr. at 452. He followed up with Virginia Blease, PA-C ("Ms. Blease"), on January 5, 2011. Tr. at 425–26. He reported a dull pain in his neck that worsened with lifting and reaching overhead, but he stated his symptoms had decreased since the rhizotomy. Tr. at 425. He also indicated the twitch in his shoulder and hand had improved. *Id.* Ms. Blease indicated Plaintiff had better ROM of his neck, grossly intact muscle tone and motor skills, intact cranial nerves, and normal gait. *Id.* A urine drug screen was positive for cannabinoids, and Ms. Blease declined to continue prescribing narcotic medications. Tr. at 445–46.

Plaintiff presented to the ER at Trident Medical Center on July 18, 2011, following two syncopal episodes. Tr. at 471. He was diagnosed with syncope and a closed head injury with loss of consciousness. Tr. at 474.

Plaintiff presented to Jomar Roberts, I, M.D. ("Dr. Roberts"), for a consultative examination on October 11, 2013. Tr. at 481. He reported daily neck pain that he rated as 10 out of 10. *Id.* He indicated his pain was worsened by sitting and was alleviated by walking. *Id.* He reported occasional chest pain. *Id.* He indicated he was able to feed and dress himself; to stand for 15 minutes at a time and for three hours during an eight-hour period; to walk for 150 feet; to sit for 15 minutes; to lift approximately 10 pounds; to drive; to climb stairs; to perform shopping; and to engage in household chores that included sweeping, mopping, vacuuming, cooking, and washing dishes. Tr. at 481–82. Dr. Roberts observed that Plaintiff ambulated without difficulty and without an assistive device; had no difficulty getting on and off the exam table or up and out of a chair; had normal heart rate and rhythm; demonstrated no edema and 2+ peripheral pulses bilaterally; had normal gait; showed normal grip strength and full ROM in all joints with normal fine and gross manipulation skills; demonstrated normal abilities to walk and squat; had normal mental status; showed 5/5 motor strength in his upper and lower extremities with no evidence of atrophy, fasciculations, tremor, or other abnormal movements; demonstrated normal sensation; and had normal reflexes. Tr. at 483–84. Dr. Roberts noted that he reviewed Plaintiff's cervical MRI dated February 26, 2010, his cervical MRI dated October 25, 2010, and his EMG and NCS dated June 2, 2010. Tr. at 484. His impressions were history of myocardial infarction with benign exam; neck and

lower back pain with no evidence of myelopathy or impaired movement; and right shoulder pain with no ROM deficits or impairment to work-related movements. *Id.* An x-ray of Plaintiff's right shoulder showed no fracture or dislocation. Tr. at 489. An x-ray of his back indicated mild degenerative disc disease and bilateral facet degenerative changes at L5-S1. Tr. at 490.

On November 8, 2013, state agency medical consultant Jean Smolka, M.D. ("Dr. Smolka"), reviewed the medical evidence and completed a physical residual functional capacity ("RFC") assessment. Tr. at 57–60. She concluded Plaintiff had the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; occasionally stoop, crawl, and reach overhead with the bilateral upper extremities; never climb ladders, ropes, or scaffolds; and avoid concentrated exposure to hazards and extreme cold and heat. *Id.*

State agency medical consultant Angela Saito, M.D. ("Dr. Saito"), reviewed Plaintiff's records and completed a physical RFC assessment on September 5, 2014. Tr. at 82–85. Dr. Saito assessed Plaintiff as having the following limitations: occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk for a total of two hours; sit for a total of about six hours in an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and avoid concentrated exposure to hazards and extreme cold and heat. *Id.* Lisa Mani, M.D. ("Dr. Mani"), assessed the same limitations on October 29, 2014. Tr. at 107–11.

9

On July 5, 2014, Plaintiff reported dizziness when lifting and numbness in his right leg. Tr. at 505. He also reported a cyst on the right side of his neck and a mole on his right leg. *Id.* Plaintiff weighed 166 pounds and his blood pressure was 144/98. *Id.* He indicated he had experienced shortness of breath in the heat. Tr. at 532. John G. Creel, M.D. ("Dr. Creel"), observed no abnormalities and indicated Plaintiff had full ROM. *Id.* On July 25, 2014, Plaintiff reported a mole on his right leg and a cyst on the right side of his back. Tr. at 505, 519. He indicated he had fallen down his steps after his ankle gave way. Tr. at 519. Dr. Creel referred Plaintiff for lab work and prescribed Tramadol. *Id.* He assessed left shoulder pain. *Id.*

On December 16, 2014, an ultrasound of Plaintiff's thyroid showed no abnormalities. Tr. at 534. A myocardial perfusion study indicated a large infarct in the inferior and inferolateral region with no ischemic reversibility and a mild reduction in ejection fraction of 45%, with inferolateral akinesis. Tr. at 544.

A December 18, 2014 MRI of Plaintiff's cervical spine revealed a disc herniation that was eccentric to the right at C3-4, with canal stenosis, moderate right ventral cord deformity, and moderately severe left foraminal narrowing; a protrusion/shallow herniation at C6-7 that was eccentric to the left, with moderate left ventral cord deformity and moderately severe left foraminal narrowing; chronic-appearing myelomalacia within the cord and mild cord deformity at C4-5; and canal stenosis, mild cord deformity, and severe right foraminal narrowing at C5-6. Tr. at 541. An MRI of Plaintiff's lumbar spine showed an annular bulge/tear at L5-S1, without disc herniation and mild canal narrowing at L2-3, without canal stenosis. Tr. at 542–43.

10

Dr. Creel provided letters indicated Plaintiff was disabled on January 16, 2015, and March 19, 2015. Tr. at 535, 571.

b.    Evidence Submitted to Appeals Council

Prescription records from BI-LO Pharmacy for the period from July 1, 2014, to July 30, 2015, indicate Dr. Creel prescribed the following medications to treat Plaintiff's impairments: Bupropion 100 milligrams, Tramadol HCL 50 milligrams, Prednisone 20 milligrams, Diclofenac Sodium DR 75 milligrams, Gabapentin 300 milligrams, Lovastatin 40 milligrams, Methocarbamol 500 and 750 milligrams, Meloxicam 7.5 milligrams, Atenolol 25 milligrams, Methimazole 10 milligrams, Clonazepam 0.5 milligrams, Trazodone 100 milligrams, Naproxen 500 milligrams, Baclofen 10 milligrams, Doxycycline Monohydrate 100 milligrams, Benzonatate 100 milligrams, Metoprolol Tartrate 25 milligrams, and Metaxalone 800 milligrams. Tr. at 581–86.

On October 4, 2014, Plaintiff complained to Dr. Creel of pain in his left shoulder, neck, and lower back that was not relieved by Tramadol. Tr. at 588. Dr. Creel prescribed Diclofenac Sodium 75 milligrams, Lovastatin 40 milligrams, and Gabapentin 300 milligrams. *Id.*

Plaintiff again reported shoulder pain on November 1, 2014, and stated Diclofenac was not helping. Tr. at 590. He indicated Bupropion had reduced his symptoms, but he was no longer able to afford it. *Id.* Dr. Creel prescribed Gabapentin 300 milligrams and Robaxin 500 milligrams. *Id.*

11

On November 20, 2014, Plaintiff reported pain in his neck, back, and chest. Tr. at 592. He requested that he be referred for new imaging studies. *Id.* Dr. Creel referred Plaintiff for MRIs of his lumbar and cervical spine and a nuclear stress test. Tr. at 594.

Plaintiff followed up with Dr. Creel to discuss his lab test results on December 6, 2014. Tr. at 596. Dr. Creel referred Plaintiff for a thyroid ultrasound and instructed him to begin a low-dose aspirin regimen. *Id.*

Plaintiff returned to Dr. Creel on January 3, 2015, to discuss the results of his nuclear stress test and MRIs. Tr. at 598. Dr. Creel prescribed Metoprolol Tartrate 25 milligrams. *Id.* On January 15, 2015, Plaintiff complained of lower back pain that was affecting his bilateral lower extremities. Tr. at 580. Dr. Creel indicated Plaintiff was trying to quit smoking. *Id.* Plaintiff followed up with Dr. Creel on February 7, 2015, to discuss his lab results and have a form completed for nicotine replacement. Tr. at 603. Dr. Creel indicated Plaintiff had been under a lot of stress because he was being evicted from his home. *Id.* He prescribed Clonazepam for severe anxiety. Tr. at 603, 604. On March 7, 2015, Plaintiff complained of pain in his back and knees. Tr. at 605. He stated he injured his back while moving. *Id.* Plaintiff followed up with Dr. Creel on May 2, 2015, to discuss his blood work and obtain a refill of Trazodone. Tr. at 612. He followed up with Dr. Creel for pain in his back and knees and medication refills on July 16, 2015. Tr. at 614.

On July 24, 2015, Dr. Creel wrote a second letter that was similar to his January and March 2015 letters, but that stated Plaintiff could "only sit or stand for 2 to 3 hours in an 8hr day continuously and would require frequent 15min breaks"; should not lift more

than eight to 10 pounds; and "should minimize his exposure to stress due to his heart condition." Tr. at 587. He stated he had seen Plaintiff on a monthly basis since July 5, 2014. *Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing on April 16, 2015, Plaintiff testified he last worked on July 28, 2009. Tr. at 41. He indicated he was being treated by Dr. Creel, who prescribed medication for his back pain. Tr. at 43.

Plaintiff testified his pain had worsened since his spinal surgery. Tr. at 44. He indicated that lifting a gallon of milk caused him to experience a stressful sensation in his chest. Tr. at 44. He stated he could sit for 20 to 25 minutes at a time. *Id.* He indicated he would stretch, lie down, or walk and sit in a different type of chair when he needed to change positions. *Id.* Plaintiff testified his pain increased when he sat for an extended period with his neck straight up. Tr. at 45. He endorsed a need to relieve the pressure from his neck. *Id.* He stated his back pain radiated to his shoulder area when he performed chores like sweeping. *Id.*

Plaintiff testified he had lived alone prior to being evicted from his home on February 17, 2015. Tr. at 41. He stated he was temporarily living with a friend who attended his church. *Id.* He indicated he spent a typical day sitting in a recliner and walking around for a change of position every 20 to 45 minutes. Tr. at 41–42. He stated he took naps during the day because he did not sleep well at night. *Id.* He testified he

13

watched television during the day. *Id.* He stated he was able to watch a 30-minute episode, but was unable to view an entire movie without falling asleep. Tr. at 42–43. He indicated he drove, swept, mopped, vacuumed, cleaned dishes, shopped, and cooked during the time that he lived alone. Tr. at 41–42. He stated he could bathe and dress himself, but had to hold onto something for stability when putting on his pants. Tr. at 43. He indicated he ate canned foods. *Id.* He denied performing household chores since moving in with his friend. *Id.* He stated he had no current driver's license. *Id.*

b.    Vocational Expert Testimony

Vocational Expert ("VE") Adger Brown reviewed the record and testified at the hearing. Tr. at 45. The VE categorized Plaintiff's PRW as a tax preparer, *Dictionary of Occupational Titles* ("*DOT*") number 219.362-070, as sedentary with a specific vocational preparation ("SVP") of four; a bookkeeper, *DOT* number 210.382-014, as sedentary with an SVP of six; and a sales analyst,[1] as sedentary with an SVP of five or six. Tr. at 48. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform sedentary work, but would be restricted to only occasional postural activities; should avoid overhead reaching; and should avoid concentrated exposure to temperature extremes and hazards such as heights or moving machinery. Tr. at 48–49. The VE testified that the hypothetical individual could perform Plaintiff's PRW. Tr. at 49. The ALJ asked if the individual would be able to perform any work if he were required to stand and stretch approximately every 45 minutes. *Id.* The VE testified

---

[1] The VE testified the job of sales analyst was not included in the *DOT*, but indicated he assessed its exertional and skill level based on his professional experience and Plaintiff's description of the job. Tr. at 48.

that a brief stretch break of a couple of minutes would have no impact on the individual's ability to perform Plaintiff's PRW. *Id.* He indicated that because Plaintiff's PRW was in non-production-oriented jobs, an employer would likely have some leniency for the individual's need to stretch, as long as the individual were on task for at least six hours in an eight-hour day. *Id.* The ALJ asked the VE to assume the individual would require a 10-minute break each hour. *Id.* He asked what effect that would have on Plaintiff's PRW. *Id.* The VE stated it would be difficult for the individual to maintain employment if he were off task for 10 minutes per hour on a regular basis. Tr. at 50.

        2.     The ALJ's Findings

In his decision dated May 5, 2015, the ALJ made the following findings of fact and conclusions of law:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
2. Claimant has not engaged in substantial gainful activity since August 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. Claimant has the following severe impairments: status-post myocardial infarction and stent placement, status-post anterior cervical discectomy and fusion, and lumbar degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).
4. Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with some additional limitations. Specifically, claimant can lift and carry up to 10 pounds occasionally and lesser amounts frequently. He can sit for 6 hours in an 8-hour day, and stand and walk occasionally. He cannot climb ladders, ropes, or scaffolds, but he can perform the other postural activities occasionally. Claimant can perform no overhead reaching. He must avoid concentrated

       exposure to temperature extremes and hazards such as heights and moving machinery.

6.     Claimant is capable of performing past relevant work as a tax preparer and bookkeeper. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. at 24–31.

## II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ neglected his duty to develop the record;

2)    the ALJ did not adequately consider Plaintiff's treating physician's opinion;

3)    new evidence submitted to the Appeals Council necessitated that the case be remanded;

4)    the ALJ did not properly evaluate Plaintiff's credibility;

5)    the ALJ relied on the VE's response to a hypothetical that did not include all of Plaintiff's limitations; and

6)    the ALJ erred in not finding that Plaintiff was disabled under Medical-Vocational Rule 201.14.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146

impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

(1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    ALJ's Duty to Develop the Record

Plaintiff argues the ALJ was constructively aware of the existence of additional treatment records from Dr. Creel and erred in failing to obtain the additional evidence. [ECF No. 15 at 26–28]. He maintains the ALJ was aware that he received additional treatment from Dr. Creel based on his testimony that Dr. Creel prescribed his pain medication; a "Recent Medical Treatment" form; a "Medications" list; and cervical and lumbar MRIs dated December 18, 2014, that Dr. Creel ordered. *Id.* at 27. He contends the ALJ neglected to question him about his current medical treatment. *Id.* at 28. Thus, Plaintiff maintains the ALJ neglected his duty to fully develop the record. [ECF No. 18 at 1–4].

The Commissioner argues the ALJ fulfilled his obligation to develop the record. [ECF No. 17 at 1]. She maintains Plaintiff was represented by counsel at the time of the hearing and that neither Plaintiff nor his counsel indicated that evidence was missing from the record. *Id.* at 16. She contends the ALJ was not required to contact Dr. Creel for clarification or additional information because the record was sufficient to allow him to make a decision about Plaintiff's claim. *Id.* at 20.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on the evidence

submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir. 1981); *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh*, 632 F.2d at 300, citing *Cutler v. Weinberger*, 516 F.2d 1282 (2nd Cir. 1975); *Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837 (3rd Cir. 1974); *Hicks v. Mathews*, 424 F. Supp. 8 (D. Md. 1976). However, "[w]hile the ALJ must make a reasonable inquiry into a claim of disability, he has no duty to 'to go to inordinate lengths to develop a claimant's case.'" *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision), citing *Thomas v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977).

Pursuant to 20 C.F.R. §§ 404.1512(d) and 416.912(d), the ALJ must develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant filed his application. The ALJ is to "make every reasonable effort" to help the claimant obtain medical records from his medical sources when the claimant gives the ALJ permission to request the reports. 20 C.F.R. §§ 404.1512(d), 416.912(d).

In explaining his reasons for giving little weight to Dr. Creel's opinion, the ALJ noted that the treatment notes did not "document any examinations contemporaneous with the dates of his letters." Tr. at 30. He also noted that the record showed Plaintiff to have received no primary care treatment after January 2011, aside from a couple of visits in July 2014. Tr. at 27.

21

It is unclear from the record whether Plaintiff's counsel was aware of the existence of the additional records and failed to disclose their absence or if she was unaware that additional records existed. Although Plaintiff cites specific evidence that he argues put the ALJ on notice of the existence of additional records, Plaintiff's counsel was aware of the same evidence, but failed to suggest to the ALJ that the record was incomplete. *See Mink v. Apfel*, 215 F.3d 1320, 2000 WL 665665, at *1 (4th Cir. 2000) (unpublished table decision) (holding that an ALJ did not fail to properly develop the medical record where the plaintiff was "represented at the hearing by counsel, who could have easily submitted the disputed documents"). If Plaintiff's counsel was unaware of the existence of additional records, Plaintiff is asking the court to find the ALJ erred in failing to recognize additional evidence existed based on the same information that failed to put his attorney on notice of the evidence.

If Plaintiff's counsel was aware of the existence of the additional evidence, she failed to disclose that fact to the ALJ and led him to believe the record was complete. While the ALJ did not specifically ask whether the record was complete, he asked Plaintiff's counsel three questions that should have reasonably induced her to disclose that medical evidence was missing from the record. First, he asked Plaintiff's counsel if she had any objection to the exhibits. Tr. at 40. If Plaintiff's counsel felt the exhibits were incomplete, she could have objected on grounds that the record was incomplete. Second, the ALJ asked Plaintiff's counsel if there was "[a]nything that we need to discuss before we take the testimony." *Id.* This question invited Plaintiff's counsel to inform the ALJ of the missing records and request additional time to submit them. Third, at the end of the

hearing, the ALJ asked Plaintiff's counsel if she had anything else to add before he closed the record. Tr. at 50. Again, Plaintiff's counsel failed or declined to reveal to the ALJ that evidence was missing from the record.

Under either scenario, Plaintiff is asking the court to find the ALJ was required to go to inordinate lengths to develop the record. *See Craft v. Apfel*, 164 F.3d 624. Although the ALJ mentioned the absence of additional evidence from Dr. Creel, he did not indicate that the evidence of record was inconsistent or insufficient to allow him to make a determination as to whether Plaintiff was disabled. He cited multiple medical records and findings that led him to conclude Plaintiff was not disabled. *See generally* Tr. at 25–30 (explaining evidence that supported the assessed RFC). He also gave other reasons for discounting Dr. Creel's opinion, including that his treatment notes did not document significant abnormal findings and that the determination of disability was reserved to the agency's decision maker. *See* Tr. at 25. Therefore, the undersigned recommends the court find the ALJ did not neglect his duty to develop the record.

### 2.    Dr. Creel's Statements

In a letter dated January 16, 2015, Dr. Creel indicated that after examining Plaintiff and reviewing his stress test and the MRIs of his cervical and lumbar spine, it was his opinion that Plaintiff was "totally and permanently disabled" and would "never be able to participate in any type of gainful employment." Tr. at 535. Dr. Creel wrote another letter on March 19, 2015, that provided the same opinion as his January letter. Tr. at 571.

Plaintiff argues the ALJ erred in declining to accord controlling weight to Dr. Creel's opinion statements. [ECF No. 15 at 28–29]. He maintains the ALJ failed to cite sufficient reasons to support his decision to accord little weight to the treating physician's opinion. Tr. at 29. He contends the ALJ was obligated to contact Dr. Creel for additional information or clarification if he considered Dr. Creel's statement to be too vague. *Id.* He argues Dr. Creel's opinion was supported by the December 2014 MRI reports and that the ALJ ignored their consistency in assessing the *opinion*. *Id.* at 30.

The Commissioner argues substantial evidence supports the ALJ's weighing of Dr. Creel's statement, which was not entitled to any special significance because it was an opinion on an issue reserved to the Commissioner. [ECF No. 17 at 1, 18–19, 21–26]. She maintains the ALJ correctly determined Dr. Creel's opinion lacked support in the record and that he was not required to seek clarification from Dr. Creel. *Id.* at 19–20.

After reviewing the evidence, the ALJ is to make findings about what the evidence shows. 20 C.F.R. §§ 404.1520b, 416.920b. However, if the evidence in the case record is insufficient[4] or inconsistent,[5] the ALJ may need to take additional actions. *Id.* "If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion

---

[4] An ALJ should consider the evidence to be insufficient if it does not contain all the information necessary to make a decision. 20 C.F.R. §§ 404.1520b, 416.920b.

[5] An ALJ should consider the evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or does not appear to be based on medically-acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520b, 416.920b. If the ALJ determines that the evidence is inconsistent, he should weigh the relevant evidence to determine if the record contains sufficient evidence to decide the issue of disability. 20 C.F.R. §§ 404.1520b(b), 416.920b(b).

about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). The ALJ may resolve the inconsistency or insufficiency by using one or more of the following actions: (1) recontacting the claimant's treating physician, psychologist, or other medical source; (2) requesting additional existing records; (3) requesting that the claimant undergo a consultative examination at the agency's expense; or (4) asking the claimant or others for more information. *Id.*

ALJs must consider all medical opinions in the record. 20 C.F.R. §§ 404.1527(b), 416.927(b). Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of the claimant's impairments, including his symptoms, diagnosis and prognosis, what he can still do despite his impairments, and his physical or mental restrictions. SSR 96-5p (1996), quoting 20 C.F.R. § 404.1527(a).

The SSA's regulations require that ALJs accord controlling weight to treating physicians' opinions that are well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that are not inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p (1996). However, an opinion that an individual is "disabled" or is "unable to work" is considered an opinion on an issue reserved to the Commissioner, as opposed to a medical opinion, and is not entitled to any special significance. 20 C.F.R. §§ 404.1527(d), 416.927(d).

It is not the role of this court to disturb the ALJ's determination as to the weight to be assigned to a medical source opinion "absent some indication that the ALJ has

dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (unpublished table decision).

In his decision, the ALJ wrote the following:

> Claimant had a couple of primary care treatment appointments in July 2014. (Exhibit 8F) Nevertheless, contrary to claimant's testimony that he is prescribed pain medications, the evidence documents few, if any, other visits with a primary care provider (other than the July 2014 visits) for any of his severe impairments.

Tr. at 27.

The ALJ gave little weight to Dr. Creel's January 16, 2015 and March 19, 2015 letters. Tr. at 30. He acknowledged that Dr. Creel examined Plaintiff in July 2014, but indicated the record lacked treatment notes that were contemporaneous with Dr. Creel's opinion statements. *Id.* He indicated the July 2014 examinations failed to document significant abnormal findings and that the decision as to whether Plaintiff was disabled was reserved to him. *Id.*

Dr. Creel's January and March 2015 letters were opinions that Plaintiff was disabled and was unable to work. *See* Tr. at 535, 571. Dr. Creel did not discuss Plaintiff's symptoms, diagnosis, prognosis, abilities, or restrictions and stated that Plaintiff was "totally and permanently disabled" and would "never be able to participate in any type of gainful employment." *See id.*; *see also* 20 C.F.R. §§ 404.1527(a), 416.927(a); SSR 96-5p. Therefore, his statements were entitled to no particular significance because they were not medical opinions, but were instead opinions on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

26

The ALJ cited sufficient reasons for declining to accord greater weight to Dr. Creel's opinion and was not obligated to contact Dr. Creel to request that he provide support for his opinion. In addition to noting that Dr. Creel's opinion was entitled to no particular significance, the ALJ explained that his decision to accord little weight Dr. Creel's statements was supported by a lack of contemporaneous treatment notes and the absence of abnormal findings in Dr. Creel's examination reports. *See* Tr. at 30. ALJs have discretion to determine whether the record contains inconsistencies that cannot be resolved without additional evidence. *See* 20 C.F.R. §§ 404.1520b(b), 416.920b(b) (providing that if any of the evidence is inconsistent, the ALJ should weigh the evidence and decide whether he can determine whether the claimant is disabled based on that evidence); 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (indicating that if there is insufficient evidence in the record or if the ALJ cannot make a decision after weighing the evidence of record, the ALJ should determine the action to be taken to resolve the inconsistency or insufficiency). Here, the ALJ found no insufficiency or inconsistency in the record that required he obtain additional evidence. Although the ALJ noted that the record lacked treatment notes for the period contemporaneous with Dr. Creel's statements, the record was not insufficient for him to make a decision because he did not merely base his decision on an absence of records, but instead relied on the evidence contained in the existing record. *See generally* Tr. at 26–30. While he found that Dr. Creel's statement that Plaintiff was disabled was unsupported by his examination findings, he was not identifying an inconsistency in the evidence, but was instead explaining his reasons for giving little weight to Dr. Creel's opinion. In light of the foregoing, the undersigned

recommends the court find the ALJ did not err in giving little weight to Dr. Creel's January and March 2015 opinions.

### 3.    Evidence Submitted to Appeals Council

Plaintiff argues the Appeals Council erred in finding that the new evidence did not provide a basis for changing the ALJ's decision. [ECF No. 15 at 31]. He maintains the evidence was relevant to the ALJ's assessment of Dr. Creel's statement and his credibility because the ALJ based his assessment of each on a perceived lack of treatment. *Id.* at 32.

The Commissioner argues the evidence submitted to the Appeals Council was not new or material and did not relate to the relevant period. [ECF No. 17 at 1–2, 21–26]. She maintains the evidence did not document functional limitations during the relevant period. *Id.* at 13. She contends that there was no reasonable possibility that the records from Dr. Creel that were submitted to the Appeals Council would have changed the ALJ's decision because they contained no examination findings or discussion of functional limitations. *Id.* at 19, 24. She argues the ALJ was unlikely to reach a different finding based on consideration of Plaintiff's medications. *Id.* at 24. She further maintains Dr. Creel's July 2015 statement was not material because it did not relate back to the relevant period. *Id.* at 24–25.

Plaintiff argues the Commissioner errs in maintaining that the evidence submitted to the Appeals Council was not new or material because the Appeals Council accepted the evidence as new and material and admitted it into the record. [ECF No. 18 at 4–14]. He contends Dr. Creel's opinion relates back to the relevant period because he based it on

objective test results and physical exams that took place during the relevant period. *Id.* at 14–15.

A claimant may submit additional evidence that was not before the ALJ at the time of the hearing, along with a request for review of the ALJ's decision. *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir. 2011), citing 20 C.F.R. § 404.967. However, the evidence must be both "new" and "material" and the Appeals Council may only consider the additional evidence "where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). If new and material evidence is offered and it pertains to the period on or before the date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record. *Id.* After reviewing the new and material evidence and all other evidence of record, the Appeals Council will either issue its own decision or remand the claim to the ALJ if it concludes that the ALJ's "action, findings, or conclusion" was "contrary to the weight of the evidence." *Meyer*, 662 F.3d at 705, citing 20 C.F.R. § 404.970(b). However, if after considering all the evidence, the Appeals Council decides that the ALJ's actions, findings, and conclusions were supported by the weight of the evidence, the Appeals Council will deny review and is not obligated to explain its rationale. *Id.* at 705–06.

"In reviewing the Appeals Council's evaluation of new and material evidence, the touchstone of the Fourth Circuit's analysis has been whether the record, combined with the new evidence, 'provides an adequate explanation of [the Commissioner's] decision.'" *Turner v. Colvin*, No. 0:14-228-DCN, 2015 WL 751522, at *5 (D.S.C. Feb. 23, 2015),

29

citing *Meyer*, 662 F.3d at 707 (quoting *DeLoatche v. Heckler*, 715 F.3d 148, 150 (4th Cir.

1983)). After reviewing new evidence submitted to the Appeals Council, the court should

affirm the ALJ's decision to deny benefits where "substantial evidence support[ed] the

ALJ's findings." *Id.*, citing *Smith v. Chater*, 99 F.3d 635, 638–39 (4th Cir. 1996).

However, if a review of the record as a whole shows the new evidence supported

Plaintiff's claim and was not refuted by other evidence of record, the court should reverse

the ALJ's decision and find it to be unsupported by substantial evidence. *Id.*, citing

*Wilkins v. Secretary, Department of Health and Human Services*, 953 F.3d 93, 96 (4th

Cir. 1991). If the addition of the new evidence to the record does not allow the court to

determine whether substantial evidence supported the ALJ's denial of benefits, the court

should remand the case for further fact finding. *Id.*

The Appeals Council initially issued a decision dated September 24, 2015, that

neglected to address the additional records that were submitted with Plaintiff's July 7,

2015 letter. Tr. at 7–12. However, upon being advised of its mistake, the Appeals Council

put aside its earlier action and issued a second notice dated October 9, 2015. Tr. at 1–6. It

indicated it considered "the additional evidence listed on the enclosed Order of Appeals

Council,"[6] as well as other evidence that it determined to be duplicative of evidence

already in the record. Tr. at 2. The Appeals Council contemplated whether the ALJ's

decision was "contrary to the weight of the evidence currently of record" and "concluded

---

[6] The "AC EXHIBITS LIST" includes a January 15, 2015 record from Edisto Indian
Clinic; a BI-LO Pharmacy prescription list; a letter from Dr. Creel dated July 24, 2015;
encounter summaries from Edisto Indian Clinic dated October 4, 2014, through July 16,
2015; and records from Lab Corp. dated November 20, 2014, through July 16, 2015. Tr.
at 5.

that the additional evidence" did "not provide a basis for changing" the ALJ's decision. *Id.*

As Plaintiff notes, it is unnecessary for the court to determine whether the evidence submitted to the Appeals Council was new or material because the Appeals Council conceded the newness and materiality of the evidence included on "AC EXHIBITS LIST" by accepting it into the record. Thus, the court must only examine whether substantial evidence sustained the Appeals Council's decision that the ALJ's actions, findings, and conclusions were supported by the weight of the entire record that included the newly-submitted evidence.

The undersigned's review of the record reveals that the evidence submitted to the Appeals Council undermined several of the ALJ's reasons for finding Plaintiff was not disabled. First, Dr. Creel's July 2015 opinion differed from his January and March statements in that it contained detailed restrictions and was not merely an opinion on an issue reserved to the Commissioner. *Compare* Tr. at 587, *with* Tr. at 535 and 571; *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, the ALJ's first reason for according little weight to Dr. Creel's January and March 2015 statements was inapplicable to the July 2015 opinion. Second, unlike the January and March 2015 statements, Dr. Creel's July 2015 opinion was submitted along with contemporaneous treatment notes. Therefore, the ALJ's second reason for disregarding the January and March 2015 statements was inapplicable to the July 2015 opinion. Third, the ALJ wrote in the decision that treatment notes did not "reflect that claimant has been prescribed pain medication consistently since his January 2011 visit at Southeastern

Spine." Tr. at 28. However, Dr. Creel's treatment notes and records from the BI-LO Pharmacy reflect that Plaintiff was prescribed medications for complaints of pain consistently between July 2014 and July 2015. *See* Tr. at 580, 581–86, 588, 590, and 614. Fourth, the ALJ relied on "few, if any visits with a primary care provider (other than the July 2014 visits) for any of his severe impairments" in assessing Plaintiff's RFC, but the records submitted to the Appeals Council reflected 14 primary care visits between July 2014 and July 2015 for complaints of pain in his left shoulder, back, neck, knee, and chest. *See* Tr. at 579–80 and 588–616. Because the evidence submitted to the Appeals Council undermined at least four of the ALJ's reasons for finding Plaintiff was not disabled, the undersigned recommends the court find the Appeals Council erred in failing to remand the case for further fact finding.

### 4.    Credibility Assessment

Plaintiff argues the ALJ improperly assessed his credibility by relying on isolated statements that were taken out of context. [ECF No. 15 at 32]. He maintains the ALJ based his credibility finding, in part, on the erroneous conclusion that he had not received recent medical treatment. *Id.* at 33. He contends the ALJ assumed he was being untruthful about his activities of daily living ("ADLs") because he reported fewer activities than he had reported a year-and-a-half earlier, but failed to consider that his ADLs had changed over the period. *Id.* at 33–34.

The Commissioner argues that substantial evidence supports the ALJ's credibility finding because the ALJ relied on Plaintiff's ADLs, limited reports to treatment providers

of significant limitations, and relatively benign examination findings in assessing his RFC. [ECF No. 17 at 26].

In considering symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness, the ALJ should first "consider whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p (1996). After determining that the individual has a medically-determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ should evaluate the intensity, persistence, and limiting effects of his symptoms to determine the limitations they impose on his ability to do basic work activities. *Id.* If the individual's statements about the intensity, persistence, or limiting effects of his symptoms are not substantiated by the objective medical evidence, the ALJ should reflect on the individual's credibility in light of the entire case record. *Id.* The ALJ must consider "the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* In addition to the objective medical evidence, ALJs should also consider the following when assessing the credibility of an individual's statements:

1.    The individual's ADLs;

2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.    Factors that precipitate and aggravate the symptoms;

4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.    Any measure other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*

The ALJ must specify his reasons for the finding on credibility, and his reasons must be supported by the evidence in the case record. *Id.* His decision must clearly indicate the weight he accorded to the claimant's statements and the reasons for that weight. *Id.*

The ALJ found that Plaintiff's medically-determinable impairments could reasonably be expected to cause the symptoms he alleged, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. at 26. He found that treatment records did not document clinical or objective findings that would preclude all work during the relevant period. *Id.* He stated the medical records showed Plaintiff to have recovered well after his heart attack and

cervical spine surgery. *Id.* He indicated the evidence was "consistent with a conclusion that claimant would be able to perform a range of sedentary work." *Id.*

The ALJ discussed Plaintiff's medical records and treatment history and provided several reasons for his conclusions regarding Plaintiff's credibility. He indicated that Plaintiff reported doing well from a cardiac standpoint in October 2009; that Dr. Pringle noted his cardiac problems were stable and would only require semi-annual follow up; and that Plaintiff had not visited a cardiologist since July 2010. Tr. at 27. He stated Plaintiff had noted improvement following the rhizotomy procedure in December 2010 and began to work part-time as an administrative assistant. Tr. at 28. He stated the treatment notes did not reflect that Plaintiff had been prescribed pain medications consistently since January 2011 and reported he had not followed up with a provider regarding his cervical spine since December 2010. *Id.* The ALJ acknowledged the objective evidence of record, but stated it did not indicate abnormalities that were not accommodated by the assessed RFC. *Id.* He considered what he perceived to be Plaintiff's inconsistent reports of his activities during the relevant period. *Id.* He stated Plaintiff's testimony that he "does essentially nothing during the day other than sit in his recliner and take naps" was inconsistent with his reports to Dr. Roberts and in the documents associated with his claim. *Id.*

The ALJ's credibility assessment was based on a record that reflected no regular medical follow up or receipt of prescription medications for pain after January 2011. *See* Tr. at 28. Plaintiff reported improvement to Ms. Blease in January 2011; had a normal consultative examination with Dr. Roberts in October 2013; and obtained no medical

treatment between January 2011 and July 2014, aside from an ER visit following an isolated syncopal episode. *See* Tr. at 425–26, 471–74, and 481–84. The ALJ's assessment of Plaintiff's credibility was accurate based on the record before him, but the evidence submitted to the Appeals Council contained a statement from Plaintiff's treating physician about how his pain affected his functional abilities and reflected regular primary care follow up, complaints of pain, and receipt of prescriptions for pain medications between July 2014 and July 2015. The ALJ also based his credibility finding on discrepancies in Plaintiff's reports of ADLs that could be explained by a worsening of symptoms after July 2014. *See* Tr. at 28. Because the ALJ determined whether Plaintiff was disabled through May 5, 2015, and the evidence submitted to the Appeals Council contained evidence of a possible worsening of Plaintiff's impairments after July 2014, it is necessary for the ALJ to reassess Plaintiff's credibility in light of the new evidence.

### 5.    Improper RFC and Hypothetical Question to VE

Plaintiff argues the ALJ erred in omitting some of his limitations from the hypothetical question presented to the VE. [ECF No. 15 at 36]. He maintains the record does not support the ALJ's findings that he could sit for six hours during an eight-hour workday and would have only mild limitation in maintaining concentration, persistence, or pace. *Id.*

The Commissioner argues the ALJ considered all of Plaintiff's credibly-established limitations in assessing an RFC for a reduced range of sedentary work. [ECF No. 17 at 2 and 29].

"The RFC assessment must include a narrative discussion describing how all the relevant evidence in the case record supports each conclusion and must cite specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p (1996). Relevant evidence includes medical history, medical signs and laboratory findings, the effects of treatment, reports of ADLs, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to the medically-determinable impairment, evidence from attempts to work, need for structured living environment, and work evaluations. *Id.* For the VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Johnson*, 434 F.3d at 659 (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)); *see also English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993). The Fourth Circuit recently held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

The ALJ explained his reasons for excluding some of Plaintiff's alleged limitations. Tr. at 29. He indicated "contrary to claimant's testimony regarding needing to change positions so frequently, treatment notes do not reflect that claimant regularly reported needing to do so to his treating providers." *Id.* He stated Plaintiff's history of part-time work as an administrative assistant and his reports of using the computer and

37

watching television were generally consistent with the demands of sedentary work. *Id.* He further noted Plaintiff neglected to "regularly report any particularly bothersome non-exertional limitations to his providers." *Id.* Based on Plaintiff's severe impairments, the ALJ found it was reasonable to conclude that Plaintiff could not climb ladders, ropes, or scaffolds, but could perform other postural activities on an occasional basis; could perform no overhead reaching; and must avoid concentrated exposure to temperature extremes and hazards, such as heights and moving machinery. *Id.* He stated the assessed RFC was consistent with Dr. Roberts's findings. *Id.*

The ALJ's hypothetical to the VE and the VE's opinion were based on the evidence available at the time of the hearing, which supported the assessed RFC. The Fourth Circuit has recently emphasized that ALJs must assess a claimant's credibility before assessing his RFC and that the RFC assessment must be based on "all of the relevant evidence in the case record." *Mascio*, 782 F.3d at 639, citing SSR 96-8p. Thus, an ALJ errs in assessing a claimant's RFC where he does not adequately assess the claimant's credibility or fails to consider the entire record. Here, the record was supplemented with evidence that undermined the ALJ's credibility determination and rendered his hypothetical question to the VE and RFC finding to be unsupported by some of the relevant evidence of record. Therefore, it is necessary for the ALJ to reassess Plaintiff's RFC on remand.

### 6.    Medical-Vocational Rule 201.14

Plaintiff argues the ALJ erred in failing to find him disabled based on Medical-Vocational Rule 201.14. [ECF No. 15 at 37]. He maintains he turned 50 years old on

October 31, 2014; was limited to a maximum of sedentary work; and was unable to perform his PRW. *Id.* The Commissioner argues that Medical-Vocational Rule 201.14 was inapplicable because Plaintiff could perform his PRW. [ECF No. 17 at 2].

The introduction to Appendix 2 to Subpart P of Part 404, better known as the Medical-Vocational Guidelines or "Grid Rules," states as follows:

> The following rules reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevent the performance of his or her vocationally relevant past work.

20 C.F.R. Part 404, Subpart P, App'x, § 200.00(a).

Medical-Vocational Guideline 201.14 directs a finding that a claimant is disabled where the claimant is limited to work at the sedentary exertional level; is closely approaching advanced age; is a high school graduate or more; engaged in PRW that was skilled or semiskilled; and lacks transferable skills to the sedentary exertional level. 20 C.F.R. Part 404, Subpart P, App'x 2, § 201.14.

The ALJ did not apply Medical-Vocational Rule 201.14 because he found Plaintiff was capable of performing his PRW. *See* Tr. at 30–31. The ALJ's determination that Plaintiff could perform his PRW was based on his assessments of Plaintiff's credibility and RFC in light of the evidence before him at the time of the hearing. Thus, he did not err in failing to apply Medical-Vocational Rule 201.14 because the Medical-Vocational Rules are inapplicable where the claimant's RFC allows him to perform his PRW. 20 C.F.R. Part 404, Subpart P, App'x 2, § 200.00(a). However, because the undersigned has

recommended the case be remanded, the ALJ should consider whether Medical-Vocational Rule 201.14 would be applicable based on the evidence submitted to the Appeals Council and the reassessment of Plaintiff's credibility and RFC.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

August 23, 2016                         Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).